**NOT FOR PUBLICATION WITHOUT THE
APPROVAL OF THE APPELLATE DIVISION**

This opinion shall not "constitute precedent or be binding upon any court." Although it is posted on the internet, this opinion is binding only on the parties in the case and its use in other cases is limited. R. 1:36-3.

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO. A-0994-22

STATE OF NEW JERSEY,

    Plaintiff-Respondent,

v.

HASSAN HILL, a/k/a
HASSAN K. HILL, and
COREY PARHAM,

    Defendant-Appellant.

_____

        Submitted February 13, 2024 – Decided March 22, 2024

        Before Judges Sumners and Perez Friscia.

        On appeal from the Superior Court of New Jersey, Law Division, Union County, Indictment No. 17-01-0023.

        Jennifer Nicole Sellitti, Public Defender, attorney for appellant (Susan Brody, Designated Counsel, on the brief).

        William A. Daniel, Union County Prosecutor, attorney for respondent (Meredith L. Balo, Assistant Prosecutor, of counsel and on the brief).

PER CURIAM

Defendant Hassan Hill appeals from the September 28, 2022 order denying his petition for post-conviction relief (PCR) without an evidentiary hearing related to his 2018 conviction for robbery, N.J.S.A. 2C:15-1(a)(2). We affirm.

I.

On December 20, 2015, D.Z.,[1] reported to the Irvington Police Department that after she arrived home, two men grabbed and robbed her. One of the men had a handgun, and they threatened to shoot her if she screamed. Her purse and backpack were then stolen along with her wallet, phone, and car keys. When the assailants asked which car was hers, she did not respond. Once released, she ran, called the police, and then discovered her vehicle was stolen. She described her assailants as African American men and gave limited descriptions.

Irvington Police located D.Z.'s vehicle in Newark near a restaurant by tracing her cell phone. The police witnessed two men exiting her vehicle and arrested one man, co-defendant Allante B. Hicks, outside of the restaurant. The police pursued the other man on foot and seized a boot that he lost during his escape. In August 2016, after receiving information that defendant committed the robbery, police requested a DNA forensic analysis from the New Jersey State

---

[1] We use initials to protect the confidentiality of the victim.

A-0994-22

Police Office of Forensic Sciences. The DNA taken from the boot and the stolen vehicle were tested and matched to defendant.

In 2017, a Union County grand jury indicted defendant and his co-defendant on charges of first-degree carjacking, N.J.S.A. 2C:15-2(a)(2), and first-degree robbery, N.J.S.A. 2C:15-1(a)(2). In February 2018, the carjacking count was dismissed.

In September, the State and defendant entered a negotiated plea agreement. Defendant pleaded guilty to first-degree armed robbery. The State agreed to recommend twelve years in prison, subject to an eighty-five percent period of parole ineligibility under the No Early Release Act (NERA), N.J.S.A. 2C:43-7.2. The State also agreed defendant's imprisonment would be served concurrent to his convictions under four separate Essex County indictments pending sentencing.

At the time of defendant's plea, the trial court had a detailed colloquy with defendant questioning his voluntariness in entering the plea, understanding of the terms, and satisfaction with the advice and information provided by his counsel. Further, the court confirmed defendant's understanding that the plea agreement was for a twelve-year term of imprisonment, subject to an eighty-five percent period of parole ineligibility for ten years and two months. The court

3

confirmed defendant had discussed the plea forms with counsel, understood his sentence would be concurrent to the Essex County sentences, and understood that counsel was free to argue for a lesser prison term. Defendant admitted to threatening D.Z. with a handgun and robbing her.

It was anticipated that the pending Essex County matters would be sentenced first, and defendant's pleas were predicated on concurrent sentences. The court had the following exchange with defendant regarding the concurrent sentences:

> THE COURT: Anything further from counsel?
>
> [TRIAL COUNSEL]: Judge, yes, there's just one thing[.] [I]t's in the plea form, but I just wanted to make sure on the record that.
>
> THE [JUDGE]: Yes.
>
> [TRIAL COUNSEL]: [T]he sentencing here it's going to be taking place [i]n October.
>
> THE COURT: Oh, yes, I didn't talk about that. You're right.
>
> [TRIAL COUNSEL]: It's going to run concurrent[ly].
>
> . . . .
>
> THE COURT: You pled already in Essex?
>
> [DEFENDANT]: Yes.

A-0994-22

THE COURT:  And during your plea they talked about being concurrent to [the plea here in] Union [County]?

[DEFENDANT]:  Yes.

THE COURT:  You sure?  It's in the forms?

[DEFENDANT]:  Yes.

        . . . .

THE COURT:  I'm sorry I didn't talk to you about that, [defendant].  So, this plea form does talk about it being concurrent to Essex County in that sentence you know that, right?

[DEFENDANT]:  Yes.

In October, defendant returned for sentencing.  He had not yet been sentenced to the four separately indicted Essex County charges.  Defendant's counsel raised the issue of the concurrent sentences with the court, and the following exchange occurred:

> [TRIAL COUNSEL]:  Before we proceed, I just wanted to . . . put it on the record that . . . part of this plea . . . contemplates that this sentence will run concurrent to a sentence which has not yet been imposed in Essex County. . . . [I]n Essex County my client is going to be receiving a [ten]-year sentence. . . . [ten] with [eighty-five] for robberies in that county. . . . [N]ow, our plea here specifically provides that this sentence is to run concurrent with that.
>
>         . . . .

A-0994-22

THE COURT: If for some reason, [defendant], you go to Essex County and they say, it's not concurrent, which we all believe that it is, contact [trial counsel], contact the [c]ourt, write me a letter I'll bring you back here and I'll resentence you. Because I understand that . . . one of the reasons that you accepted this plea was that you contemplated that everything was going to run concurrent[ly], right?

[DEFENDANT]: Yes.

THE COURT: And I want to make sure that happens, okay?

[DEFENDANT]: Yes.

. . . .

[TRIAL COUNSEL]: Thank you, [j]udge. Again, I wanted my client to make sure he understood. Thank you.

At sentencing, trial counsel argued for a reduced term of imprisonment seeking ten years, specifically noting that the plea negotiations occurred "for a long period of time," and defendant had purposefully not filed motions which would have "escalated [the] plea offer." The prosecutor addressed that the original ten-year offer discussed had been withdrawn, explaining it was because she became aware at the time that other "charges arose in Essex County."

The judge found no mitigating factors but found aggravating factors three, N.J.S.A. 2C:44-1(a)(3), "risk that the defendant will commit another offense,"

6

and nine, N.J.S.A. 2C:44-1(a)(9), "need for deterring the defendant and others from violating the law." Defendant was sentenced in accordance with the plea agreement to twelve years of imprisonment subject to NERA, concurrent to the Essex County charges. Thereafter, defendant was sentenced on the Essex County matters to an aggregate ten-year term subject to NERA, concurrent with his Union County armed robbery sentence. Defendant did not appeal his convictions.

Defendant filed a self-represented PCR petition, which was dismissed as procedurally defective. He subsequently filed an amended PCR petition which was supplemented by PCR counsel's submissions. In PCR counsel's brief, defendant asserted he was denied the right to effective assistance of counsel. Alternatively, he argued he had demonstrated a prima facie showing warranting an evidentiary hearing because trial counsel failed to conduct a thorough investigation, discuss strategy, and communicate "during the course of plea discussions" to "determine what [wa]s in his best interest." In his self-represented submission, defendant separately argued: the motions he requested were not filed; a Wade[2] hearing was not requested; and he was precluded from

---

[2] United States v. Wade, 388 U.S. 218 (1967).

A-0994-22

firing his counsel. Defendant averred the petition was not barred by procedural considerations.

After argument, the PCR judge issued a comprehensive twenty-four-page written decision denying the PCR petition without a hearing. The PCR judge found defendant "failed to establish a prima facie case of ineffective assistance of counsel [(IAC)] by the preponderance of the credible evidence or the likelihood of his success on the merits." This appeal followed.

Defendant raises a single point:

> POINT ONE
>
> [DEFENDANT] IS ENTITLED TO AN EVIDENTIARY HEARING ON HIS CLAIMS THAT HIS ATTORNEY RENDERED [IAC] BY FAILING TO INVESTIGATE THE CHARGES AGAINST HIM, FAILING TO FILE PRETRIAL MOTIONS, AND FAILING TO FULLY EXPLAIN THE IMPACT OF HIS ESSEX COUNTY CHARGES ON HIS UNION COUNTY SENTENCE.

II.

"We review a judge's decision to deny a PCR petition without a hearing for abuse of discretion." State v. Vanness, 474 N.J. Super. 609, 623 (App. Div. 2023). In the absence of an evidentiary hearing, we review de novo the factual inferences drawn from the record by the PCR judge as well as the judge's legal conclusions. State v. Aburoumi, 464 N.J. Super. 326, 338-39 (App. Div. 2020).

A petitioner must establish entitlement to "PCR by a preponderance of the evidence." State v. O'Donnell, 435 N.J. Super. 351, 370 (App. Div. 2014). Additionally, a petitioner is not automatically entitled to an evidentiary hearing by simply raising a PCR claim. See State v. Cummings, 321 N.J. Super. 154, 170 (App. Div. 1999). Our rules anticipate the need to hold an evidentiary hearing on a PCR petition "only upon the establishment of a prima facie case in support of [PCR]." R. 3:22-10(b).

To succeed on a claim of IAC, a defendant must satisfy both prongs of the test set forth in Strickland v. Washington, 466 U.S. 668, 687 (1984), as adopted by State v. Fritz, 105 N.J. 42, 58 (1987), by a preponderance of the evidence. "First, the defendant must show that counsel's performance was deficient." Strickland, 466 U.S. at 687. This requires demonstrating that "counsel made errors so serious that counsel was not functioning as the 'counsel' guaranteed the defendant by the Sixth Amendment." Ibid. The United States Constitution requires "reasonably effective assistance." Ibid. An attorney's performance will not be deemed deficient if counsel acted "within the range of competence demanded of attorneys in criminal cases." Ibid. (quoting McMann v. Richardson, 397 U.S. 759, 771 (1970)). Therefore, "[w]hen a convicted defendant complains of the ineffectiveness of counsel's assistance, the defendant

must show that counsel's representation fell below an objective standard of reasonableness."  Id. at 687-88.

When assessing the first Strickland prong, "[j]udicial scrutiny of counsel's performance must be highly deferential," and "every effort [must] be made to eliminate the distorting effects of hindsight."  Id. at 689.  "Merely because a trial strategy fails does not mean that counsel was ineffective."  State v. Bey, 161 N.J. 233, 251 (1999).  Thus, a trial court "must indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance," and "the defendant must overcome the presumption that, under the circumstances, the challenged action [by counsel] 'might be considered sound trial strategy.'"  Strickland, 466 U.S. at 689 (quoting Michel v. Louisiana, 350 U.S. 91, 101 (1955)).  Further, the court must not focus on the defendant's dissatisfaction with counsel's "exercise of judgment during the trial. . . . while ignoring the totality of counsel's performance in the context of the State's evidence of [the] defendant's guilt."  State v. Castagna, 187 N.J. 293, 314 (2006).

Under the second prong of the Strickland test, the defendant must show "the deficient performance prejudiced the defense."  466 U.S. at 687.  This means "counsel's errors were so serious as to deprive the defendant of a fair trial, a trial whose result is reliable."  Ibid.  A defendant must show by a "reasonable

10

probability" the deficient performance affected the outcome. Fritz, 105 N.J. at 52 (quoting Strickland, 466 U.S. at 687). "A reasonable probability is a probability sufficient to undermine confidence in the outcome." State v. Pierre, 223 N.J. 560, 583 (2015) (quoting Strickland, 466 U.S. at 694; Fritz, 105 N.J. at 52). It is insufficient for the defendant to show the errors "had some conceivable effect on the outcome." Strickland, 466 U.S. at 693. Ultimately, "[a]n error by counsel, even if professionally unreasonable, does not warrant setting aside the judgment of a criminal proceeding if [it] had no effect on the judgment." Id. at 691.

III.

We reject defendant's claim of a prima facie showing of IAC based on trial counsel's alleged failure to investigate the charges against him. Defendant's contention is without merit because, as the PCR judge correctly found, he failed to "provide any factual support" demonstrating trial counsel's failure to "conduct a thorough investigation and . . . to challenge the State's proof." Defendant posited no facts regarding what should have been investigated and what would have been revealed, and as the PCR judge noted, the assertions are "[not] supported by an affidavit or certification." Defendant failed to demonstrate a

11

prima facie showing that an investigation may have yielded a better or different result and that trial counsel's failure to so investigate prejudiced him.

A PCR petitioner asserting that trial counsel inadequately investigated the State's evidence and possible defenses "must assert the facts that an investigation would have revealed, supported by affidavits or certifications based upon the personal knowledge of the affiant or the person making the certification." State v. Porter, 216 N.J. 343, 353 (2013) (quoting Cummings, 321 N.J. Super. at 170). It is clear "where 'reasonable professional judgments' support a [trial] counsel's decision to limit an investigation, the court should not find ineffective performance of counsel." State v. Chew, 179 N.J. 186, 205 (2004) (quoting State v. Martini, 160 N.J. 248, 266 (1999)). Here, defendant failed to "overcome a 'strong presumption' that counsel exercised 'reasonable professional judgment' and 'sound trial strategy' in fulfilling his [or her] responsibilities." See State v. Hess, 207 N.J. 123, 147 (2011) (quoting Strickland, 466 U.S. at 689-90).

Defendant's assertion that trial counsel was ineffective for failing to "attempt to challenge the State's proof regarding the DNA testing" is also unavailing. Shortly after D.Z.'s vehicle was stolen, the police located it and witnessed two men exiting the vehicle. Police arrested the co-defendant, but the other suspect fled and discarded his boot, which was seized. The Office of

Forensic Sciences tested the boot for DNA, and determined the DNA retrieved matched that of defendant. Defendant has not proffered any cause for trial counsel to challenge the DNA evidence; the boot was appropriately collected and then tested. See State v. Curtis, ___ N.J. ___, ___ (2024) (slip op. at 2) (holding police may seize abandoned property because "[t]he act of fleeing to avoid a lawful arrest in a public place demonstrates defendant's intent to place as much distance as possible between himself and the property left behind"). Moreover, on appeal, defendant does not dispute the PCR judge's finding that his DNA "was also found on the steering wheel" of the stolen vehicle, which further connected him to the robbery.

Defendant's contention that trial counsel was ineffective for failing to request a Wade hearing is also unsupported because D.Z. did not identify defendant out-of-court and had only provided a limited description of defendant. See Pressler & Verniero, Current N.J. Court Rules, cmt. 2 on R. 3:11 (2024). "It is not [IAC] for defense counsel not to file a meritless motion." State v. O'Neal, 190 N.J. 601, 619 (2007); State v. Bell, 388 N.J. Super. 629, 640 (App. Div. 2006).

We conclude defendant's blanket assertion that trial counsel was ineffective for failing to file pretrial motions is without merit. As the PCR judge

13

observed, defendant was clearly apprised of trial counsel's "deliberate strategy not to file substantive motions in order to prevent the escalation of the plea offer" as trial counsel recited on the record at sentencing.  Notably, when asked at the plea hearing whether he had any questions for trial counsel, defendant answered "no."  Defendant never questioned trial counsel's statement regarding "plea escalation."  We discern no abuse of discretion in the PCR judge's finding that defendant's allegations were without merit.

Lastly, defendant's argument that his trial counsel was ineffective for failing to advise him of the impact of his Essex County charges is without merit.  "[C]ounsel's performance will not be deemed deficient if counsel has provided the defendant 'correct information concerning all of the relevant material consequences that flow from such a plea.'"  Vanness, 474 N.J. Super. at 624 (quoting State v. Agathis, 424 N.J. Super. 16, 22 (App. Div. 2012)).  In the context of a guilty plea, "a defendant must prove 'that there is a reasonable probability that, but for counsel's errors, [he or she] would not have pled guilty and would have insisted on going to trial.'"  State v. Gaitan, 209 N.J. 339, 351 (2012) (alteration in original).

At the time of defendant's plea, his trial counsel clearly established that his plea agreements, for the robbery and Essex County charges, contemplated

14

concurrent sentences. Undisputedly, the plea negotiations occurred over "a long period of time." Defendant's understanding of his plea, and specifically that his convictions were to be served concurrently, is evidenced by the "plea colloquy" which, as the PCR judge found, demonstrates "trial counsel . . . reviewed and fully explained the plea." Further, defendant acknowledged discussing with trial counsel and signing the plea forms which delineated the sentence was concurrent to his Essex County charges. Defendant addressed the trial court at sentencing and asked that his attorney's request for a reduced sentence be considered. When the trial court asked if there was "[a]nything else you want to say," defendant answered "[n]o."

We are unpersuaded by defendant's contention that he has made a prima facie showing that trial counsel failed to explain "the impact of his Essex charges" and discern no reason to disturb the PCR judge's well-reasoned decision. We concur with the PCR judge that defendant's contentions did not warrant an evidentiary hearing. See State v. Marshall, 148 N.J. 89, 158 (1997) ("To establish such a prima facie case, the defendant must demonstrate a reasonable likelihood that his or her claim will ultimately succeed on the merits.").

A-0994-22

To the extent we have not addressed defendant's remaining arguments, we conclude they lack sufficient merit to warrant discussion in a written opinion. R. 2:11-3(e)(2).

Affirmed.

I hereby certify that the foregoing is a true copy of the original on file in my office.

CLERK OF THE APPELLATE DIVISION

A-0994-22